When you're ready, Mr. Musgrove. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Kyle Musgrove. I'm here representing the appellant and the plaintiff in Pax Laboratories. As this Court knows, this case is back up for a second time on appeal, essentially on the issue that was remanded last time, which was the enablement of anticipation, or the enabling, whether the prior art was enabled. Didn't Judge Hornan do exactly what we asked him to do, and why would we reverse him? Your Honor, we would submit that, first, Judge Hornan made errors of law with regard to the finding of an enablement with regard to prior reference. And also, even if you adopted his view of the law, i.e., that enablement would require the singling out of really dissolved ALS, that the facts that he pointed to, while not erroneous, were irrelevant to that consideration because we weren't talking about a genus with unnamed species, which would relate to the hundreds to thousands of compounds that are mentioned. With regard to the errors of law, we would submit that there are two errors. The first error is, as this Court stated when it remanded, there is a presumption that the prior art reference is enabling for both claimed and unclaimed subject matter. Obviously, we can't state what Judge Hornan's mind, but it's both that presumption at all. And there is some evidence in the way the opinion is styled, such as that he was not persuaded of the singling out, and some things on pages A10 through A13 of the record, that the presumption was not awarded. Excuse me, if there is such a presumption in the peculiar facts of this case, who has the burden of overcoming it? The presumption with regard to the enablement issue is on appellees. There's a presumption that the prior art is enabling. It's not, obviously, the same burden of clear and convincing evidence that is ultimately on us with regard to the issue of anticipation. But they have to come forward with evidence to show that the prior art is not enabling. The... But the district judge did address that. It really has to do with the person skilled in the art and whether that person could make something of the 940 patent, right? Certainly, that was ultimately part of his conclusion. That goes, I think, more to the second point, which is, is it a requirement under this court's precedent that with regard to enablement of the prior art reference, you have to demonstrate a singling out of two things that are specifically named in the patent? And... Just going to the specifics here for a minute. The reference cites to hundreds or maybe thousands of compounds. It cites to many diseases. It doesn't link the compounds to the diseases. Why isn't Judge Farnan right that there's undue experimentation at a minimum would be necessary to somehow determine which compound is linked to which disease and how? Your Honor, with all due respect, we would disagree. Certainly, the genus, and this is an undisputed fact, encompasses hundreds to thousands of compounds. But the case law in this court talks about when there is a genus, but there are specifically named species in that genus. Willey's Hall is a specifically named genus. That was an issue that was found as a fact by the court. You would say there's 18 species? Yes. And Your Honor, perhaps today is a day of corrections. We would like to state that on page 13 of our brief, there's an issue of whether it's 17 or 18. It is 18. That was our error. Benzel is a phenyl alkyl group, so it would fit. But obviously, nothing turned on either group. Let me just... To make sure I understand the construct, when we're talking about enablement of an assertedly anticipating reference, and in this case, we're talking about enablement with respect to a method claim, correct? That's correct. I guess, am I correct in thinking that the question is, does the 940 patent teach one to use riazol to treat ALS? That would seem to be in looking at... I looked at this Elon case, and that seems to be what I gathered there. It said, enablement requires the prior... Must teach one of ordinary skill to carry out the claimed invention. So transposing that language to what we have here, a method claim, am I correct in thinking that the inquiry is, does the 940 teach one to use riazol to treat ALS? Well, certainly, that's the way Your Honor, writing for the majority, phrased the question, I believe, at 847. Well, it's actually, it's what Judge Rader said also in his dissent. Right. For concurrence. But I mean, is that the correct construct? Do you quarrel with that? We quarrel with it to the extent you interpret that to mean what Judge Farnan did. But as I stated it, and as it's stated in Elon and in Judge Rader's separate opinion in this case, you don't quarrel. We do not quarrel with the issue that it is a question of whether you can make the invention. In Elon, the question was really... No, it's not making the invention, really, it's not. We're not talking about making something. I mean, I guess, and I might be wandering off into here, I don't know, but I assume anyone can make raliozole. Isn't the question here whether the 940 patent teaches one to use raliozole to treat ALS? Certainly, that is a question. When you have a method claim like this. Right, and we would submit that that question, where I would disagree with Judge Rader respectfully, is Judge Rader said there's no teaching of any of these compounds within these inventions, of any of these disease states. And certainly, we do not have a case here where you have each of the 18 compounds that we've talked about listed with raliozole saying raliozole is effective for all nine of these conditions, or eight or however you wanna copy it, then the next paragraph with the next one. And I think everybody would acknowledge if that was the way this was set out, as opposed to the shorthand of compounds of formula one, then we would have... We would have anticipation in this case under this courts law. So the question really becomes, when you have a shorthand notation to compounds of formula one are effective, are useful in treating all of these conditions, that's a teaching that those compounds are useful. Now, if we're talking... So the question is, in the setting of this patent, the 940 patent, is it correct to say, the question is, given the circumstances of the patent, was there a teaching to use raliozole to treat ALS? That seems to be what was said in Elon. Is there a teaching to use the invention? Well, in Elon... Or to use the raliozole. In Elon, to my understanding of that case, when we're talking about a transgenic mouse, there was a number of theorized ways about how to formulate or how to create this mouse. See, I'm just trying to understand though, the general enablement inquiry as a framework, and I... Because I kind of struggle with a little bit, it's kind of easier to understand when you're talking about a machine, but when you're talking about a method claim, what I came up with from looking at the cases is that the inquiry is, does, in this case, does the 940 patent teach one to use raliozole to treat ALS? Now, what is wrong with that construct? Leaving aside what the facts are, why is that the wrong analytical framework? I think to the extent you talk... It depends on what you mean by teaching. If by teaching, you're meaning that that requires, with the methods of use, that those methods of use be taught to be effective, as opposed to just that there is a general teaching. Oh no, we say it doesn't have to be effective. Right, if there's just a linkage required, we don't have any debate with that as a legal argument, but the debate we have is the linkage doesn't need to be particularly raliozole. Now, the prior art reference mentions raliozole five times, three of them to exclude them from the claimed invention, twice more as a starting material for other compounds. How is that linking raliozole to treatment of ALS? I'm sorry, where we would come back to is that the explicit recitation in the patent relates to the compounds of formula one being useful for those conditions. And one of those conditions is specifically enumerated ALS. Where the court found as a fact, and is not argued, is that the exception is only for purposes of the invention. In fact, if you look in column one, it says, with the exceptions of raliozole and one other compound, these compounds are new and part of the invention. There is nothing at all in this patent which would indicate to you somehow that raliozole, as opposed to all these other related compounds, would be ineffective. In fact, if you look at the paragraph, the key paragraph in our view, that bridges columns two through three, it relates that activity based on a test result in glutamate induced convulsions. And raliozole, by their own expert submission, it was the only compound at that time known to have that activity. So based on the postulated, the theoretical connection that was postulated in the 940 patent, the only compound you would look to would be raliozole. With regard to an A1, you can look to other prior art patents. Donahue's very specific on that point. And if you do that, as we've set forth in our brief, if you go to the Millius Mazzol patent, which I believe is A7254 through 5.6 in the appendix, also to the Johnson patent, A7398 through 406, those specifically talk about raliozole, and in fact tell you that with regard to raliozole, raliozole was already known, and in fact, the A14 patent acknowledges this, was already known to be effective with regard to, depending on how you count, six out of eight or seven out of nine conditions, they're specifically enumerated in the 940 patent. So if you were going to start with something, if you did have to find a singling out, we would say that it was an error, the court didn't consider any of these things, any of the art we just cited. The only conclusion you would come to is raliozole. There's also a mention of the 18 compounds. Similarly there, and I think there's a view that somehow this list is cobbled together from the working examples and everything else, but what's clear is you might have a list shorter than 18 compounds, but raliozole would be one of the first compounds on the list. This patent specifically says in column one, which is what Judge Fardin relied on in what we've cited as the impacts two decision, to find that raliozole is a compound within 401. And the question now becomes, if there is a presumption of enablement, at least in my mind, is there anything to indicate to you that raliozole would not be, if you wanted to look at it as teaching, is there anything, if there's a presumption of enablement, to teach that raliozole would not be useful for those treatments? Which the patent specifically says the 401 compounds are useful. Now, one point I would like to mention, if the court agrees with us on the enablement point, we have asked, and I'm always... Well, to start with, I think the judge pointed to this, the 940 reference says the compounds according to the invention can be used, but then it excludes raliozole from the invention. So it kind of... The reference itself says, don't look at raliozole. I'm into my little time, but I'd like to answer the question. The question is, there are two different portions of the patent. The portion we've cited to you with regard to the compounds of formula one is the paragraph I mentioned written in columns two and three. There's another portion later on in column 13, which I believe Your Honor is referring to, which talks about the dosage amounts. Certainly, there's some inconsistency in language there, and we appreciate that. What we would say with regard to the particular question of whether that relates to raliozole, one, I hate to speak, I hesitate to speak for Judge Shaw, but this court's previous opinion states that the compounds of formula one, that that information relates to compounds of formula one as opposed to compounds of the invention. This court can obviously decide what it wants to do with that. But specifically with regard to the factual assertions at trial and how a person of ordinary skill in the art would understand that and whether it relates to raliozole or not, there was unrebutted evidence from our expert, Dr. Rothstein, at 1287 and 1288, that specifically says he would understand that as relating to raliozole. Dr. Brooks, their expert, did not debate that. And in fact, on 1291, he then applies that to claims four and five, which are suitably dependent claims. Thank you, Mr. Musgrove. Mr. Brugal? Thank you, Your Honors. The district court in this case did exactly what the panel asked him to do. He reviewed the disclosure of formula one in the 940 patent to determine whether it enabled the use of the claimed invention, the use of an effective amount of raliozole to treat ALS. He made a number of factual findings along the way, which haven't been challenged, which is clearly erroneous. And he found that the disclosure of formula one, the disclosure of hundreds of thousands of compounds that can treat at least eight different diseases, as found by the district court, does not enable the very specific claimed invention in this case. But wouldn't one of skill in the art pretty quickly narrow us from those hundreds of thousands down to at least the 18 and maybe even further, as suggested by Mr. Musgrove? If we factor in the knowledge of skill in the art, what are we really talking about here? I believe that the knowledge of a person of skill in the art would start with the understanding that there was no known treatment for ALS. Raliozole is still the only treatment for this terrible disease, and would view the statements in the 940 patent that these hundreds of thousands of compounds, as an undifferentiated group, can be used to treat this longer list of diseases, one of which is ALS, would not leave one of ordinary skill in the art at the time of the invention, to conclude that, ah, raliozole is in fact a treatment for ALS. And so I believe that Judge Farring got it right. There is no linkage in the patent, prior art patent, of the two. And I would contrast that to the facts in this court's decision... Now can you answer my question? How many compounds are really at stake once you factor in the skill in the art? Ah, there are 17 compounds which are specifically exemplified as useful in the invention. The specific references to raliozole, Judge Farring found, as a matter of fact, unchallenged, would not leave one of ordinary skill in the art to conclude that raliozole could be used to treat any disease any specific disease, let alone to treat ALS, because those references are exclusionary in one instance, they say it's not part of the invention, and are just as a starting material to end up what the patent thinks is the good stuff, the 17 compounds that one could say were preferred. So there might be an argument that for the 17 compounds, that there had been some specific disclosure of their use, but you still have no linkage to any specific disease. What do you make of the reference in column 3 at the top, where it talks about the neurological conditions in which glutamate may be implicated, and specifically mentioning ALS? It does specifically mention ALS, Your Honor, there's no question about that. So why would not a person skilled in the art be naturally led to investigate this? Without undue experimentation. All that that key paragraph, the one bridging columns 2 and 3, leaves one of skill in the art with, as found by Judge Farmer, is that this entire group, undifferentiated, hundreds to thousands, may be useful in treating these eight diseases, one of which is ALS. I thought we agreed it was 17, not hundreds of thousands. The key paragraph does not say anything about these 17. They are later on identified. And Relezo is not one of the 17, Your Honor. It is not one of the compounds. There are only four compounds that are called preferred. There are only 17 that are actually shown disclosures of how to make them. The only specific reference to Relezo is not relevant to its use in a medical treatment. But I think Judge Zobel is asking a more sophisticated question than that. If we know glutamate is the problem, and we know Relezo is a glutamate inhibiting compound, why wouldn't one of skill in the art have said, Aha, there it is, Relezo. It isn't specifically mentioned in this reference as the way to treat ALS. But you know the connection is there. Judge Farnan made factual findings in his first decision, which also were not challenged and are undisputed, that the glutamate theory was known by those of skill in the art at the time of the invention to be unproven, that the anti-glutamate agents that had been tested as of the time of the invention for ALS all failed. And so this tenuous connection, Judge Farnan referred to it as speculative, is not enough to leave one of ordinary skill in the art, reading this key paragraph that impacts relies on, that bridges columns two and three. They would not read that to be a teaching, as Judge Schall said the appropriate test is, and I agree with that, a teaching that I should use an effective amount of Relezo to treat ALS. But effective, you add effective, which is not part of the inquiry now. No, an effective amount is in the claim. It has to be an effective amount. And there also, as Judge Farnan found factually, there is no disclosure of what an effective amount of Relezo might be. The only dosing information in the prior Art 940 patent relates to compounds of the invention, which specifically excludes Relezo. So there is no information in the four corners of the prior Art patent as to what an effective amount of Relezo is. And because this was a disease with no known treatment at the time of the invention, one of ordinary skill in the art would have no knowledge or expectation of what an effective amount of Relezo or any other compound might be to treat ALS. If I'm hearing you correctly, you're saying the glutamate theory was just a theory and that it's a hindsight reconstruction to go back and say, ah, now that we've found Relezo, you can't identify it in this prior Art reference and make the link that you discovered. That's correct, Your Honor. Somebody of ordinary skill at the time of the invention, reading the 940 patent, which is the relevant framework for this analysis, would not pick out Relezo, would not pick out ALS and say, ah-ha, we finally have the first treatment ever for this terrible disease. It's pure hindsight, and it shows that Judge Farnley reached the correct conclusion that the very general, nonspecific disclosure in the 940 patent would not enable one of skill in the art, as of the time of the invention, to practice the later-claimed narrow invention. And I would compare this fact pattern to the Paracon case, where the ingredient of squirrel palmitate was specifically identified in the prior Art as a skin-benefit ingredient. And that is the type of disclosure that is strikingly absent in the prior Art 940 patent. There is no disclosure in that patent that says Relezo, or any other compound for that matter, is an ALS treatment agent. There is nothing that discloses to one of skill in the art, except through hindsight, the claimed invention. Mr. Musgrove started out by suggesting that Judge Farnon ignored a presumption. Do you agree? I do not agree. Judge Farnon read the prior decision of this court. He was well aware of the Amgen case, which is the basis for the presumption. In fact, he cited it in his opinion. He didn't cite the presumption. He didn't refer to the presumption. We both agree that his opinion was silent. But you're saying he, nonetheless, addressed it and overcame it. He did. Because the Amgen case of this court holds that if a patentee presents evidence of non-enablement that a court finds persuasive, the trial court must then exclude the particular prior Art patent in any anticipation inquiry. And that is precisely what the district court did. He reviewed the evidence that we had presented at trial and reviewed it again in the context of this court's remand. And he made factual findings based on that evidence that one of ordinary skill in the art reviewing a 940 patent would not have been enabled to practice our later claim to invention. So this court could remand to Judge Farnon. But my guess is that he would just say, I did apply the presumption, I reviewed all the evidence, and I still reached the same conclusion. So I think it is a harmless omission on the district court's part. Anything further, Mr. Burghoff? Thank you very much. Mr. Musgrove, you have a little more than a minute and a half remaining. In order to address two specific points that were raised, one, returning to the question that Judge Schall asked earlier to make sure that I'm on the same page, to the extent by teaching you would require that there be something other than that you could make and carry out the invention, i.e. that you could combine and resolve with ALS, two things that are specifically identified in the patent. We would say that the standard of possession in this court would not be a different standard for a method of using the treatment. That would be the standard. Can you make and carry it out? There is no dispute here that you can make radiozole. In fact, the 940 patent tells you how by citing to a 1962 purpose. But isn't teaching me that someone would look at the 940 patent and would come to the conclusion, isn't this the test? That patent is telling me or advising me, or I don't want to say teaching again, but teaching me to use radiozole to treat ALS. I mean, I get that from Elon. That's what Judge Newman said in Elon. She said, does it teach? And she was quoting, I think, a Monsanto case. Your Honor, that teaching sounds more like written description to me when you're talking about possession, that you have a specific location. Well, it seems to be what we've said in the cases. Let me ask you this. I'm trying to understand. Why are you uncomfortable? I'm not saying this in an argumentative sense. I mean, I read Elon. It said teach. And so it seemed to me this is a useful construct. Why are you resisting it? Again, I'm not saying in an argumentative sense. I'm just trying to understand what the problem is. I'm only resisting it because to the extent we're talking about that in contrast to the multitude of cases in front of this court, whether it be some more Donahue, which talks about making and carrying out the invention, I disagree that to the extent teaching implies something other than that, that there is some different standard here for methods of treatment as opposed to other art. Your Honor, I realize I'm past. I was answering a question before. May I address one other point very briefly? Please. With regard to the glutamate theory that was addressed briefly, with regard to whether or not one would believe that ALS would actually work, that decision was decided by this case the first time. In fact, if you go back to the case which was heavily relied upon there, Rasmussen, that was exactly the situation with finasteride. You didn't know. In fact, the court found the reference non-enabling because you wouldn't believe with what was known in the art at the time that finasteride would actually work. But the same type of disclosure from a foreign reference was found to be enabling. Same thing here. Whether or not in the 940 patent they could have asserted such a claim is very different from whether or not the prior art is enabling that. Thank you very much. Thank you. This audible court is adjourned until tomorrow morning at 10 o'clock a.m. Thank you.